(164 App. Div. 228)

JOHN BATT & CO., Limited, v. EARLE. (No. 6110.)

(Supreme Court, Appellate Division, First Department. November 6, 1914.)

1. SALES (§ 32*)—REQUISITES AND VALIDITY—OFFER AND ACCEPTANCE.

Where defendant informed plaintiff that he had friends who were producing per month 100 tons of ore containing from 50 to 60 per cent. of metallic antimony, and asked a price on 100 tons monthly, and later offered for immediate answer 100 tons for shipment during March at $100 on the basis of 50 per cent., plaintiff to have the right to reject if it did not assay 50 per cent. on arrival in New York, and plaintiff cabled, "Accept your terms 100 tons 50% minimum $100 ton of 2,240 lbs. will be conditional upon—requires option to cancel—if not shipped March," and defendant cabled a confirmation "subject to the conditions named," defendant's last cable concluded the contract as a contract for the sale of 100 tons of 50 per cent. minimum on the basis of $100 per ton of 2,240 pounds, to be shipped during March, with the right to cancel if not so shipped, and to reject if it did not assay 50 per cent. after arrival.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 59; Dec. Dig. § 32.*]

2. SALES (§ 179*)—REMEDIES OF BUYER—REJECTION.

Under such contract, and in view of evidence as to such construction by an expert and by plaintiff, the sale was upon condition that, if the ore on arrival did not assay 50 per cent., plaintiff might reject it, and that was his exclusive remedy.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 456–468; Dec. Dig. § 179.*]

3. APPEAL AND ERROR (§ 1176*)—ORDER SETTING ASIDE VERDICT—QUESTIONS REVIEWABLE.

On appeal by defendant in an action for breach of contract from an order setting aside a verdict for plaintiff on the ground of the inadequacy of damages, though it is held that no damages were recoverable, the only relief that can be given defendant is to reinstate the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4588–4596; Dec. Dig. § 1176.*]

Appeal from Trial Term, New York County.

Action by John Batt & Co., Limited, against Ellis P. Earle. From an order setting aside a verdict on the ground of insufficiency of damages, plaintiff appeals. Reversed, and judgment directed for plaintiff on verdict.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Richard T. Greene, of New York City, for appellant.
Homer L. Loomis, of New York City, for respondent.

SCOTT, J.   The action is for damages for the nonfulfillment by defendant of a contract for the sale to plaintiff of 100 tons of antimony ore.   There is no dispute as to the making of the contract, which was effected wholly by cable and correspondence.   There is a serious question, however, as to its interpretation.   Antimony ore is a somewhat rare commodity.   Its history appears to be that it has been found for a few years in one country, and then for a few years in another, but rarely in large quantities.   In the year 1906, when the contract in litigation was made, and at the time of the trial, the principal sources of supply were Mexico and China, very little being found in the United States.

[1] On January 2, 1906, defendant, who is a dealer in metals in the city of New York, wrote to plaintiff, a metal dealer in England, that he had friends in the West who were producing 100 tons per month of ore containing from 50 to 60 per cent. of metallic antimony, and asking a price on 100 tons monthly.   It is quite apparent, and, as we think, of some importance in construing the subsequent contract between the parties, that that contract was made with reference to the particular output of ore referred to by defendant in his letter of January 2, 1906.   In other words, what defendant was offering to sell, and what plaintiff must have understood him to be offering to sell, was the antimony being produced by the friends referred to in the letter.   On February 10, 1906, plaintiff replied by cable, making a tentative offer and asking for a firm offer from defendant.   On the same day the defendant complied and made a firm offer as follows:

"100 tons antimony shipment during March.   We make you the following offer, good for immediate answer by telegraph.   One hundred dollars on the basis of 50%.   Shippers not to be held responsible for delay caused by railroad.   *You to have the right to reject if it does not assay 50% after arrival in New York.*"

On February 12, 1906, plaintiff answered by cable:

"Accept your terms 100 tons 50% minimum $100 ton of 2240 lbs will be conditional upon—requires option to cancel—if not shipped March.   Make further offer."

It will be observed, and it is so conceded, that this latter cablegram was not, strictly speaking, an acceptance of defendant's offer, so as to make a firm contract, because it was not made "immediately," and did not purport to be an unconditional acceptance, containing some stipulations not found in defendant's offer.   These new conditions were that the ore shipped should be "50% minimum," instead of being sold on "a basis of 50%"; that the tons should be long tons of 2,240 pounds; and provided for a cancellation if shipment was not made in March.   The effect of the counter proposition, which began with the words "Accept your offer," was that plaintiff accepted defendant's offer, if modified by the new conditions imposed by plaintiff, thus leaving accepted and unmodified the provision in defendant's offer: "You have the right to reject if it does not assay 50% after

arrival in New York." On February 17, 1906, defendant, after repeated cables from plaintiff asking for an answer, replied by cable: "We hereby confirm subject to the conditions named." The plaintiff's claim is, and with this view we agree, that this latter cable concluded the contract upon the terms stated by defendant, as modified or added to by plaintiff's cable of February 12th.

The agreement thus concluded was that defendant sold and plaintiff bought 100 tons of antimony ore of 50 per cent. minimum on the basis of $100 per ton of 2,240 pounds, to be shipped during March; plaintiff having the right to cancel if not shipped in March, and to have the right to reject if it did not assay 50 per cent. after arrival in New York.

[2] The antimony ore mentioned in defendant's letter of January 2d, and which was the subject of the contract of sale, proved, when it arrived in New York, to be much less rich than expected, assaying only about 24 per cent. No 50 per cent. ore was received, and, of course, none could be or was shipped under the contract with which we are now concerned. The less rich ore was subsequently sold to plaintiff under another contract at a much lower price. The plaintiff's contention is that defendant agreed at all events to sell and ship 100 tons of ore of the minimum richness of 50 per cent., and, having failed to do this, is liable for damages for his default. This was the view taken by the jury, to whom the court left the construction of the contract. The defendant, on the other hand, contends that the sale was upon conditions, one of which was that, if the ore on arrival in New York did not assay 50 per cent., the plaintiff might reject it, and that this stipulated right to reject afforded to the purchaser the exclusive remedy in case the ore fell below 50 per cent.

With this latter contention we agree. As has already been noted, the parties were dealing with respect to a particular lot of ore which it was expected would assay up to 50 per cent., although in the nature of things its actual richness in antimony could not be ascertained until its arrival and assay in New York. This was the construction put upon the contract by an expert witness called by plaintiff, whose testimony on this point was given without objection; and it was also the construction adopted by defendant in a letter to plaintiff, which was duly answered by plaintiff in a letter which took no exception to defendant's expressed understanding of the meaning of the contract.

[3] There was consequently no question of damages to be submitted to the jury. No damages being legally recoverable, it follows that even the small sum awarded as damages to plaintiff cannot be said to be inadequate, although it may be said, in passing, that if we felt called upon to consider the question of damages, it would be difficult to find warrant in the evidence for any greater amount than that given by the jury.

The manner in which this appeal comes to us, being only from the order setting aside the verdict, leaves nothing to be considered except the propriety of that order. For the reasons stated, we think that it was erroneous.

It must therefore be reversed, and judgment directed for the plaintiff upon the verdict, with costs and disbursements of the appeal to the defendant, appellant. All concur.